IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Lance P Hefty,                       Case No. 19-31232-beh

              Debtor.            Chapter 13

**DECISION AND ORDER SUSTAINING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN**

      Mr. Hefty is an above-median-income, Chapter 13 debtor who appears to have a negative "monthly disposable income" according to one area of his bankruptcy petition, yet shows a substantially positive "monthly net income" according to a separate set of documents. His Chapter 13 plan proposes to pay some amount to his unsecured creditors over the course of his 5-year plan, though the Chapter 13 case trustee asserts the amount proposed is not enough under the Bankruptcy Code. For the reasons that follow, the Court agrees with the trustee's position, and will sustain the trustee's objection to confirmation of the debtor's plan.

**FACTS**

      On November 27, 2019, the debtor, Mr. Lance Hefty, initiated this Chapter 13 bankruptcy case with the assistance of counsel. ECF Doc. No. 1. When he filed his case, he recently had begun a new job, and his Schedule I reported a gross monthly income of $6,517.00. *Id.* at 30. His budget further reported that Mr. Hefty would have $916.00 of "monthly net income" after payroll deductions and expenses to devote to his Chapter 13 plan. *Id.* at 33.

      Mr. Hefty proposed a Chapter 13 plan that required him to make payments of the full $916.00 per month to the trustee, for a period of 60 months, for a total of $54,960.00 to be paid into the plan. ECF Doc. No. 5. Of that total, Mr. Hefty estimated that $16,874.40 would go toward payment of a secured claim owed to Ally Financial (secured by the debtor's 2103 Kia

Sorrento); $3,111.00 would go toward payment of the trustee's administrative expenses; $1,250 would go toward priority unsecured tax claims; and $27,000 would go toward the $163,683.42 in allowed general unsecured claims, meaning that his general unsecured creditors would receive roughly 16.5% of their claims.[1, 2]

Mr. Hefty also completed his "means test" through a Form 122C-1 Calculation—"Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period"—and, as required by Fed. R. Bankr. P. 1007(b)(6) and his above-median income, he also completed a Form 122C-2 Calculation—"Chapter 13 Calculation of Your Disposable Income"—and submitted them along with his schedules. ECF Doc. No. 1, at 43–44. Form 122C-1 calls for a statement of the average monthly income that a debtor has received from all sources in the six calendar months before the debtor filed his bankruptcy petition. During the six-month look-back period, Mr. Hefty had been receiving income from two jobs, CAMP and Kohl's. *Id.* at 54. He reported a current monthly income of $5,426.03 and a disposable monthly income of $(97.92). *Id.* at 43, 52.

On February 11, 2020, the Chapter 13 trustee filed an objection to Mr. Hefty's plan, asserting that he was unable to determine whether the debtor was contributing all disposable income to the plan as required under 11 U.S.C. § 1325(b). ECF Doc. No. 18. The trustee explained that Mr. Hefty's new employment required him to file an amended Form 122C to include a *Lanning* adjustment in the calculation.[3] *Id.* The trustee asserted that the resulting

---

[1] $127,620.62 of the total $163,683.42 is related to student loan debt. *See* ECF Claim No. 12.

[2] These proposed payments to the various classes of creditors total only $48,234.40. In the exhibit to the plan setting forth the "total amount of estimated trustee payments," however, the debtor accounted for the full $54,960, by projecting that $33,724.60 (instead of $27,000) would be paid to nonpriority unsecured creditors. The terms of the plan, however, and not the exhibit, control. *See* ECF Doc. No. 5, at 7.

[3] Here, the trustee is referring to the case of *Hamilton v. Lanning*, 560 U.S. 505 (2010), discussed *infra*.

increase in the disposable monthly income would then require an amended plan that provides 100% payments to nonpriority unsecured claims.[4] *Id.*

On March 27, 2020, the debtor submitted an amended Form 122C. Mr. Hefty's form now calculated his gross monthly income at $4,169.52 and reported that he had worked only at Kohl's during the six-month look-back period. ECF Doc. No. 22. With all other amounts remaining the same, the calculation now resulted in a disposable monthly income of $(904.43). *Id.* at 11. Additionally, Part 3 of the form—the *Lanning* adjustment portion referred to by the trustee—now reported an increase in wages due to a "new job" that would result in an increase of $1,897.48 per month to the $(904.43) disposable monthly income. *Id.* Notably, the increase in income was only reported, and not included in any calculations. *Id.* Therefore, Mr. Hefty's standardized "disposable monthly income" from his Form 122C, as amended, showed a $1,820 discrepancy from his actual "monthly net income" from his Schedules I and J.

## LEGAL BACKGROUND

The Bankruptcy Code provides that when a trustee or an unsecured creditor objects to a Chapter 13 debtor's plan confirmation, the bankruptcy court must consider additional confirmation criteria, found in 11 U.S.C. § 1325(b). The Court may not approve the plan unless it provides for the full repayment of unsecured claims or "provides that all of the debtor's <u>projected disposable income</u> to be received" over the duration of the plan "will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1) (emphasis added). And while the next subsection defines "disposable income," the Code does not define "*projected* disposable income."

Section 1325(b)(2) defines "disposable income" as "current monthly income . . . less amounts reasonably necessary to be expended. . ." for the

---

[4] During briefing, the trustee revised his position from requiring a 100% distribution to requiring distribution of no less than $59,783.00. *See* ECF Doc. No. 27 ("It appears there was some confusion with regard to the student loans. Nevertheless, based on the Amended Means Test and calculation of Projected Disposable Income as proposed by the Trustee, the dividend to the non-priority unsecured claim should be not less than $59,783.").

debtor's maintenance and support. In turn, "current monthly income" is calculated by averaging the debtor's monthly income during the six-month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition. 11 U.S.C. § 101(10A). Further, "amounts reasonably necessary to be expended" is defined—where a debtor's income exceeds the state's median income—as only certain specified and standardized expenses found in § 707(b)(2)(A) and (B). The formula to find a debtor's "disposable income" has been incorporated into a debtor's bankruptcy petition at Official Form 122C-1 and -2, and is known as the "means test," described above.

Because the Bankruptcy Code does not define "projected disposable income," there was a split among courts (prior to 2010) as to how to treat the term in a § 1325(b)(1) objection context. *Hamilton v. Lanning*, 560 U.S. 505, 509–10 (2010). Some courts used a mechanical approach, where a debtor would first find his or her disposable income using the formula set out by the means test and then multiply this monthly amount by the number of months for the Chapter 13 plan, with the resulting amount being the debtor's "projected disposable income." *Id.* Most courts, however, went one step further and also considered foreseeable changes in a debtor's income or expenses during the life of the plan. *Id.* In 2010, the Supreme Court resolved this split and held that the "forward-looking approach" is the better method to find a debtor's projected disposable income: "[W]hen a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 560 U.S. at 509, 524.

### THE PARTIES' POSITIONS

The trustee maintains his objection, asserting that when calculating projected disposable income pursuant to 11 U.S.C. § 1325(b)(1) in an above-median case, where there are known or virtually certain changes, the Court

should use a forward-looking approach. On its face, this contention is in line with the *Lanning* decision.

The trustee further argues that the mechanism to find this "forward-looking" projected disposable income is by including the forward-looking income in Form 122C—by combining the current monthly income with the *Lanning* adjustment to calculate a new disposable monthly income that is now not based solely on the look-back period.

The debtor counters that he did have a change of income immediately prior to filing the case due to his change in employment, but he asserts that the change in income does not require a change in Form 122C, because the form finds the monthly disposable income based on a strict look-back period. Rather, he asserts that because of the unusual circumstances brought about by a new job, the Court's mechanism to use a forward-looking approach should be to consider actual income and expenses—from Schedules I and J—in finding the projected disposable income under § 1325(b)(1).

## DISCUSSION

What the *Lanning* decision does not explicitly describe, and therefore is now for this Court to determine, is by what mechanism the Court should consider these known or virtually certain changes for a debtor. Here, the trustee asserts that the increase in income should be applied to the means test, using the statutory expenses, and the resulting new calculation should dictate how much is required to be paid to unsecured creditors under § 1325(b). On the other hand, the debtor asserts that the means test is strictly backward-looking, therefore, by virtue of having a negative monthly disposable income, he has no requirement to pay unsecured creditors under § 1325(b), and further, if the trustee wants to consider actual future income of the debtor, he must also consider the debtor's actual expenses from the debtor's submitted budget (including increased monthly administrative expense).

For the reasons that follow, the Court concludes that the trustee has the better argument.

### A. *Hamilton v. Lanning*

Both parties rely on *Hamilton v. Lanning* in support of their positions. The debtor reads *Lanning* to allow a bankruptcy court to rely solely on Schedules I and J—and thus disregard the means test in its entirety—in calculating an above-median debtor's projected disposable income, so long as the debtor's income or expenses "have changed or are virtually certain to change" since the filing of the case. (In other words, so long as the debtor has filled out part 3, question 46, of the means test.) But the debtor's position is based largely on a misapprehension of the underlying facts of *Lanning*.

According to the debtor's version of *Lanning*, the bankruptcy court determined the debtor's projected disposable income using only schedules I and J:

> The debtor filed a Schedule I showing her actual projected income, which was much less than the "current monthly income," and she filed a schedule J showing her actual projected expenses. The net income from I and J was the amount of $149.03 available for plan payments, and the debtor used Schedules I and J to calculate her projected disposable income. The debtor did not file an amended means test, and the Court did not require that the debtor adjust her current monthly income or disposable income on a newly recalculated *means test* using a different "current monthly income" or "disposable income."
>
> . . .
>
> Accordingly, the [Supreme] Court upheld the decision to confirm the plan using the projected disposable income as determined from the debtor's schedule I and J.
>
> . . .
>
> Just as in *Lanning*, the debtor used schedule I and J to calculate the amounts he would pay into his Chapter 13 Plan.

ECF Doc. No. 26, at 6–8.

But in fact, the bankruptcy court in *Lanning* expressly *rejected* the use of Schedule J in calculating the debtor's "projected disposable income." After concluding that the debtor's Schedule I income, rather than the income listed on the means test, could be used in calculating her projected disposable

income under section 1325(b)(1)(B), the court then considered what expenses should go into the calculation, and reached the opposite result. The court determined that the formula Congress set out in the Code (the means test), and not Schedule J, was the appropriate mechanism for calculating expenses to reach the debtor's projected disposable income:

> The next issue the Court must decide is whether it should subtract the expenses shown on Form B22C—some of which are formulaic and some of which are "actual," or those shown on Schedule J, which are allegedly "actual" expenses, from the appropriate income number, to determine the dividend that should be paid to unsecured creditors by above-median income debtors under § 1325(b)(1)(B). The plain language of § 1325(b)(3) summarily decides the issue.
>
> That statute requires that "[a]mounts reasonably necessary to be expended under paragraph (2) *shall* be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." Section 707(b)(2)(A)(ii)(I)-(V) establishes very definitive deductions from income, based on Internal Revenue Service National and Local Standards as well as on some of a debtor's actual monthly expenses for "the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides...." In this statute, Congress expressly contrasted when the standardized (or "applicable") allowance must be used, and when actual expenses were to be used, in determining "disposable income."
>
> This demonstrates that Congress clearly understood the difference between actual expenses and "standardized" expenses, and elected to establish a means test formula that used a mix of those two. Accordingly, if the Court were to use Schedule J (which reflects actual expenses in every expense category), in determining which expenses to deduct from income, it would be reading all references to National and Local IRS Standards out of the relevant statutes, which of course it cannot do. **This Court finds that above-median income debtors must deduct from income the expenses they itemize on Form B22C to arrive at the minimum amount that they must pay to unsecured creditors, except for limited exceptions not expressly argued here.**

*In re Lanning*, No. 06-41037, 2007 WL 1451999, at *7 (Bankr. D. Kan. May 15, 2007), *aff'd*, 380 B.R. 17 (B.A.P. 10th Cir. 2007), *aff'd*, 545 F.3d 1269 (10th Cir. 2008), *aff'd sub nom. Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010) (emphasis added).

Indeed, in holding that the debtor's plan was confirmable, the bankruptcy court engaged in its own calculation of the debtor's projected disposable income, using the debtor's income as reported on Schedule I, but her expenses *as reported on the means test*:

> Because Debtor Lanning's Schedule I showed actual income of $1,922, and her B22C showed expenses of $4,228, the means test would result in Debtor not having to pay anything to unsecured creditors, because the remainder is a negative number. If she pays zero, however, she cannot formulate a feasible plan that meets all the other requirements of § 1325(a). Nothing prevents debtors from electing to pay more than the statutory means test requires, in order to meet the requirement that a plan must be feasible, so long as the payment continues for 60 months. Accordingly, since Debtor Lanning has proposed to pay $144 per month, her plan is confirmable so long as it continues 60 months.

*Id.* at *8.

Once the facts of *Lanning* become clear, the debtor's argument (that "the court should look at schedules I and J, as the Supreme Court did in *Lanning*, to determine 'projected disposable income' as of the date of the effective date of the plan," ECF Doc. No. 26, at 10) falls apart.

The Supreme Court's decision in *Lanning* stands simply for the proposition that, when calculating projected disposable income in an above-median case, bankruptcy courts may account for known or virtually certain changes in the debtor's income or expenses at the time of confirmation. Nowhere in the decision does the court imply that the existence of such changes transfers the calculation of projected disposable income from the means test over to Schedules I and J. Rather, the means test should always be the starting point in calculating projected disposable income: "[A] court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Hamilton v. Lanning*, 560 U.S. at 519.

### B. *In re Early*

The only other case relied on by the parties is *In re Early*, 523 B.R. 804 (Bankr. S.D. Ill. 2014). In *Early*, the above-median debtor's actual expenses were greater than those allowed by the means test. Relying on *Lanning*, the debtor in *Early* urged the court to look to her actual expenses as reported on Schedule J, rather than those dictated by the means test, in calculating her projected disposable income. The court rejected the argument, first concluding that *Lanning* did not apply, because the debtor's case was not an "unusual" one in which there were known or virtually certain significant changes in the debtor's financial circumstances. The court went on to describe the primacy of the means test in calculating projected disposable income: "While guided by the fresh start and other bankruptcy policies, the Court may only advance these policies '*within the framework prescribed by Congress and Form B22C.*' *Lanning* . . . promote[s] Congress's directive by placing primary importance on the utilization of Form B22C in determining projected disposable income." 523 B.R. at 811 (emphasis in original) (internal citation omitted).

Mr. Hefty correctly points out that *Early* involved a debtor who did not experience a change in income, and therefore the facts of *Early* are not identical to those present here. But Mr. Hefty's situation does bear one important similarity to that in *Early*—neither Mr. Hefty nor the debtor in *Early* experienced a significant change in *expenses* since the filing of their bankruptcy cases. For this reason, Mr. Hefty necessarily advocates the same argument made by the debtor in *Early*—that the bankruptcy court should use the debtor's expenses as reported on Schedule J, rather than those dictated by the means test, despite the lack of any significant changes in the debtor's expenses.

Under Mr. Hefty's approach, even though he has not demonstrated any "unusual" circumstances with respect to his expenses (as required under *Lanning*), Schedule J trumps the means test, solely because his *income* has changed. As a practical matter, this approach would allow the debtor to deduct

expenses not permitted under the means test, without having to provide any justification for doing so. For example, on his means test, Mr. Hefty reported his expenses for "food, clothing, and other items" using the amount set by the applicable IRS National Standard, $727.[5] ECF Doc. No. 22, at 5. But Mr. Hefty reported the same expenses on Schedule J as totaling $910 ($500 for "food and housekeeping supplies"; $200 for "clothing, laundry, and dry cleaning"; $100 for "personal care products and services"; and $110 for "entertainment, clubs recreation, newspapers, magazines, and books"). ECF Doc. No. 1, at 33. Similarly, while Mr. Hefty reported his transportation and vehicle operating expenses on the means test using the allowable IRS Local Standard of $191,[6] his Schedule J reports those same expenses as $726 ($650 for transportation and $76 for vehicle insurance). *See* ECF Doc. No. 22, at 7; Doc. No. 1, at 33. In addition, Schedule J includes a $100 expense for "vet and dog food," which is not an allowable expense deduction on the means test. Mr. Hefty offers no explanation for why he should be allowed these extra deductions in calculating his projected disposable income—particularly when his approach would leave similarly-situated debtors (above-median debtors who, like Mr. Hefty, have not experienced a significant change in their *expenses*) bound by the expense restrictions set forth in means test.

## C. Calculation of Mr. Hefty's projected disposable income

Based on the analysis above, the Court concludes that the trustee has advanced the proper calculation for Mr. Hefty's projected disposable income. Because Mr. Hefty is an above-median debtor, his projected disposable income should be calculated by using the monthly disposable income reported on

---

[5] The IRS breaks this amount into five categories: food ($386); housekeeping supplies ($40); apparel & services ($88); personal care products & services ($43); and miscellaneous ($170). *See IRS National Standards for Allowable Living Expenses (Cases Filed Between May 1, 2019 and October 31, 2019, Inclusive),* available at www.justice.gov/ust/eo/bapcpa/20190501/bci_data/national_expense_standards.htm.

[6] *See* IRS Local Transportation Expense Standards - Midwest Census Region (Cases Filed Between May 1, 2019 and October 31, 2019, Inclusive), available at www.justice.gov/ust/eo/bapcpa/20190501/bci_data/IRS_Trans_Exp_Stds_MW.htm.

question 45 of Form 122C-2, adjusted upward to reflect the increase in income reported on question 46 of Form 122C-2, which results in projected disposable income of $993.05. Because the debtor's plan does not commit $59,583.00 ($993.05 x 60) to pay the claims of unsecured creditors, his plan cannot be confirmed over the trustee's objection.

As a final point, the Court notes that even if it were to accept the debtor's methodology to calculate his projected disposable income, his plan still would not meet the confirmation requirements of 11 U.S.C. section 1325(b)(1)(B). The debtor's position is that his projected disposable income, according to Schedules I and J, is $916 per month; because he proposes to pay $916 per month into the plan, the debtor believes he has satisfied the requirements of section 1325. But the debtor's position ignores the language of the Code, which requires that, when the trustee or an unsecured creditor has objected to the plan, projected disposable income be applied "to make payments *to unsecured creditors*" under the plan. 11 U.S.C. § 1325(b)(1)(B) (emphasis added). Mr. Hefty's plan does not propose to pay $54,960 ($916 x 60) to unsecured creditors. So, even if the Court were to calculate his "projected disposable income" using Schedules I and J, as Mr. Hefty urges, the Court still could not confirm his current proposed plan.

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the trustee's objection to confirmation is sustained. The debtor must file an amended Chapter 13 plan within 30 days of the date of this decision.

Dated: July 27, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge